## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CARE ONE, LLC, *et al.*

            Plaintiffs,

- vs –

ELIZABETH STRAUS, *et al.*

            Defendants.

Civil No. 25-12743-JKS-MAH

---

## DEFENDANT ANDROSKY LUGO'S BRIEF
## <u>IN SUPPORT OF MOTION TO DISMISS</u>

---

Mark A. Berman, Esq.
**HARTMANN DOHERTY ROSA**
**BERMAN & BULBULIA LLP**
433 Hackensack Avenue, Suite 1002
Hackensack, New Jersey 07601
t: 201-441-9056
e: mberman@hdrbb.com

*Attorneys for Defendant*
*Androsky Lugo*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT.............................................................................1

RELEVANT BACKGROUND...............................................................................2

ARGUMENT ..........................................................................................................4

    I.    PLAINTIFFS' RICO CLAIMS ARE TIME BARRED. .....................4

    II.    PLAINTIFFS FAIL TO STATE A RICO CAUSE OF ACTION AS A MATTER OF LAW....................................................................8

        A.    The Complaint Fails to Plead A RICO Enterprise .....................8

        B.    The Complaint Fails to Plead a Pattern of Racketeering Activity .....................................................................................11

    III.    PLAINTIFFS' RICO AND FRAUD CLAIMS ARE NOT PLED WITH SUFFICIENT PARTICULARITY. ........................................16

    IV.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS.................................................................21

    V.    PLAINTIFFS' STATE LAW CLAIMS ARE BARRED BY DELAWARE'S THREE-YEAR STATUTE OF LIMITATIONS.....23

    VI.    THE COURT SHOULD DISMISS PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IN DEFERENCE TO A PENDING DELAWARE CHANCERY COURT ACTION ADJUDICATING THE SAME ISSUE.............................................26

CONCLUSION .....................................................................................................29

## TABLE OF AUTHORITIES

### CASES

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.,*
  483 U.S. 143 (1987)......................................................................................4

*Allen Neurosurgical Assocs. v. Lehigh Valley Health Network,*
  No. CIV-A-99-4653, 2001 U.S. Dist. LEXIS 284, 2001 WL 41143 (E.D. Pa.
  Jan. 18, 2001)...........................................................................................17

*Amy Liu v. Credit Suisse First Bos. Corp. (In re Initial Pub. Offering Sec.
  Litig.),*
  341 F. Supp. 2d 328 (S.D.N.Y. 2004) ......................................................6

*Annulli v. Panikkar,*
  200 F.3d 189 (3d Cir. 1999) ....................................................................17

*Benak v. All. Capital Mgmt. L.P.,*
  435 F.3d 396 (3d Cir. 2006) ......................................................................6

*Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.,*
  87 F. App'x 227 (3d Cir. 2003) .................................................13, 17, 19

*Borough of West Mifflin v. Lancaster,*
  45 F.3d 780 (3d Cir. 1995) ......................................................................21

*Boyle v. United States,*
  556 U.S. 938 (2009).....................................................................................9

*Breitfeller v. Playboy Entm't Grp., Inc.,*
  Case No. 05-cv-405-T-30TGW, 2005 U.S. Dist. LEXIS 23124 (U.S. M.D.
  Fla. 2005) ................................................................................................13

*Care One, LLC v. Adina Straus,*
  Docket Nos. A-1215-20, 2022 N.J. Super. Unpub. LEXIS 2189, 2022 WL
  851722 (N.J. Super. Ct. App. Div. Mar. 22, 2022)...............................23

*CareOne, LLC v. Burris,*
  Civil No. 10-2309 (FLW), 2011 U.S. Dist. LEXIS 69594, 2011 WL 2623503
  (D.N.J. June 28, 2011) .......................................................................19, 20

*Cisneros v. Petland, Inc.*,
  972 F.3d 1204 (11th Cir. 2020) ................................................................9

*Forbes v. Eagleson*,
  228 F.3d 471 (3d Cir. 2000) ....................................................................5

*Garlanger v. Verbeke*,
  223 F. Supp. 2d 596 (D.N.J. 2002) ........................................................14

*Giles v. Phelan, Hallinan & Schmieg, LLP*,
  901 F. Supp. 2d 509 (D.N.J. 2012) ........................................................14

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
  492 U.S. 229 (1989) ..................................................................11, 12, 19

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ..................................................................................13

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ................................................................20

*In re Ins. Brokerage Antitrust Lit.*,
  618 F.3d 300 (3d Cir. 2010) .................................................................8, 9

*In re Pattern Energy Grp. Inc. Sec. Litig.*,
  No. 20-275-MN-JLH, 2022 U.S. Dist. LEXIS 14859, 2022 WL 263312 (D.
  Del. Jan. 27, 2022) ...............................................................................27

*Kach v. Hose*,
  589 F.3d 626 (3d Cir. 2009) ....................................................................5

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
  926 F.2d 1406 (3d Cir. 1991) ..................................................11, 12, 19

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997) ..........................................................................4, 5, 7

*Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003) ..................................................................24

*LabMD Inc. v. Boback*,
  47 F.4th 164 (3d Cir. 2022) ............................................................4, 5, 12

*Lightning Lube, Inc. v. Witco Corp.*,
 4 F.3d 1153 (3d Cir. 1993) ........................................................................................15

*Lum v. Bank of Am.*,
 361 F.3d 217 (3d Cir. 2004) ................................................................................8, 16, 17

*Markowitz v. Northeast Land Co.*,
 906 F.2d 100 (3d Cir. 1990) .......................................................................................21

*Mathews v. Kidder Peabody & Co.*,
 260 F.3d 239 (3d Cir. 2001) .......................................................................................5, 7

*Ottilio v. Valley Nat'l Bancorp*,
 591 F. App'x 167 (3d Cir. 2015) ..................................................................................16

*Ray v. Spirit Airlines, Inc.*,
 836 F.3d 1340 (11th Cir. 2016) .....................................................................................9

*Rotella v. Wood*,
 528 U.S. 549 (2000)....................................................................................................4, 5

*Saint Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*,
 967 F.3d 295 (3d Cir. 2020) .......................................................................................13

*Schlaifer Nance & Co. v. Estate of Warhol*,
 119 F.3d 91 (2d Cir. 1997) .........................................................................................14

*Schmidt v. Skolas*,
 770 F.3d 241 (3d Cir. 2014) .......................................................................................3, 4

*Sedima, S.P.R.L. v. Imrex Co.*,
 473 U.S. 479 (1985)....................................................................................................7, 12

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
 742 F.2d 786 (3d Cir. 1984) .......................................................................................16

*Spirits v. Ragghianti*,
 No. 23-2913, 2024 U.S. App. LEXIS 15487, 2024 WL 3177773 (3d Cir. June
 26, 2024) ......................................................................................................................8, 9

*Talley v. Clark*,
 111 F.4th 255 (3d Cir. 2024) .......................................................................................21

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966)......................................................................................21

*United States v. Turkette*,
  452 U.S. 576 (1981)........................................................................................9

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  860 A.2d 312 (Del. 2004) ............................................................................24

*Warden v. McLelland*,
  288 F.3d 105 (3d Cir. 2002) .........................................................................16

*Wealth v. Fox Rothschild LLP*,
  Civil Action No. 23-3194 (JKS) (JBC), 2025 U.S. Dist. LEXIS 122441, 2025
  WL 1779203 (D.N.J. June 27, 2025)...................................................8, 11, 20

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995)......................................................................................27

## STATUTES

10 *Del. Code Ann.* § 8106 ......................................................................................24

18 U.S.C. § 1961 ...............................................................................................8, 11

18 U.S.C. § 1962 .......................................................................................8, 13, 15

18 U.S.C. § 2252A ...........................................................................................12, 13

18 U.S.C. § 2256 ...................................................................................................13

18 U.S.C. § 3509 ...................................................................................................13

28 U.S.C. § 1367 ...................................................................................................21

Fed. R. Civ. Proc. 9 .....................................................................................16, 17, 20

Fed. R. Civ. Proc. 12(b) ....................................................................................4, 8, 26

Fed. R. Civ. Proc. 12(f) .........................................................................................14

## PRELIMINARY STATEMENT

This lawsuit is just the latest salvo in a long-running internal family and corporate dispute between Daniel E. Straus, the founder, chairman and CEO of Plaintiffs Care One, LLC and Care Realty, LLC, and his daughter, Defendant Elizabeth ("Lizzy") Straus and Care One's former general counsel, Defendant Androsky ("Alberto") Lugo. Stripped of rhetoric and salacious allegations, the First Amended Complaint (the "Complaint") repackages workplace grievances and internal corporate disputes, known to Plaintiffs since at least 2018, into an overreaching civil RICO claim. As shown below, the RICO claims are time-barred and legally deficient, and the remaining state-law claims should be addressed, if at all, in state court. Therefore, the Court should dismiss the Complaint as a matter of law.

**RELEVANT BACKGROUND**

Plaintiffs Care One, LLC and Care Realty, LLC are Delaware corporations operating in the healthcare and skilled nursing facility space. The Complaint alleges that, from 2015 through 2021, two former Care One executives, Straus and Lugo, engaged in a scheme to misappropriate corporate funds by manipulating vendor relationships, submitting and approving fraudulent invoices, and abusing their authority to facilitate improper payments. (Am. Compl. ¶ 1.) Plaintiffs also allege that Defendants engaged in an undisclosed and inappropriate intimate relationship. The Complaint identifies two non-party vendors, Monello Landscape Industries and The Reichert Entities, as participants in an alleged RICO enterprise. (Am. Compl. ¶ 42). According to Plaintiffs, Defendants used these vendors to funnel company funds for personal expenses, including payments for furniture, vacation rentals, landscaping, and other personal services, by falsifying, mischaracterizing, and submitting unauthorized invoices. Plaintiffs allege that Defendants' personal relationship and this alleged improper conduct give rise to federal RICO, breach of fiduciary duty, and other state common law claims. (Am. Compl. ¶¶ 17, 23, 41–44, 60.)

These allegations are not new. In April 2018, a former Care One executive director filed a lawsuit against Care One, Straus and Lugo alleging an identical factual narrative: that Defendants Straus and Lugo used vendor relationships for

- 2 -

personal benefit, engaged in an undisclosed personal relationship while in executive positions, and retaliated against internal whistleblowers. *See* Ex. A (*DeVincenzo v. Care One, LLC*, BER-L-4570-18 First Amended Complaint). Indeed, DeVincenzo's allegations in that case are expressly incorporated into Plaintiffs' pleading in this case. (Am. Compl. ¶¶ 23-24).[1] Seven years later, Care One now claims that the same factual allegations alleged against it in 2018 form the basis of a RICO scheme and common law torts.

---

[1] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record...." but "an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal citations omitted) (emphasis in original).

## ARGUMENT

### I.    PLAINTIFFS' RICO CLAIMS ARE TIME BARRED.

Counts I and II of the Complaint are barred by the four-year statute of limitations applicable to federal civil RICO claims. Plaintiffs filed this action at least seven years after Care One was on notice, via the *DeVincenzo* litigation, of the Complaint's core factual allegations and resultant injury. Therefore, the Court should dismiss Plaintiffs' RICO claims as time barred under Federal Rule of Civil Procedure 12(b)(6). *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (explaining that a limitations defense may be raised by motion under Rule 12(b)(6) where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations") (internal citation omitted).

Civil RICO claims are governed by a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). In *Rotella v. Wood*, 528 U.S. 549, 553–54 (2000), the Supreme Court held that, under the "injury discovery rule," the civil RICO limitations period begins to run when a plaintiff discovers or should have discovered the injury caused by the alleged RICO violation. *See also LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022). *Rotella* reaffirmed the Supreme Court's earlier decision in *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187–89 (1997), that the civil RICO statute of limitations does not restart with each new predicate act.

Together, *Rotella and Klehr* hold that the civil RICO limitations period does *not* run from a plaintiff's discovery of the scheme, pattern of racketeering activity, or predicate acts. *Rotella*, 528 U.S. at 554. Rather, a plaintiff's ignorance of the full scope of the underlying misconduct does not defeat accrual of their civil RICO claim; rather, the limitations period is triggered as soon as a plaintiff knows – or should have known – of its injury. *See Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001) ("In determining when a RICO claim accrues, we apply an injury discovery rule 'whereby a RICO claim accrues when plaintiffs knew or should have known of their injury.'") (*quoting Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000)). In *Forbes* and subsequent cases, the Third Circuit has made clear that inquiry notice is triggered, and the civil RICO limitations clock starts to run, when a plaintiff has sufficient information of some injury, even in the face of denials of wrongdoing and regardless of any later-committed predicate acts. *Forbes*, 228 F.3d at 487-89. *See also Kach v. Hose*, 589 F.3d 626, 634-35 (3d Cir. 2009) ("A cause of action accrues even though the full extent of the injury is not then known or predictable."); *Boback*, 47 F.4th at 180–82 (3d Cir. 2022) (holding that LabMD knew of its RICO injury for statute of limitations purposes when FTC launched its investigation in 2010, even though it suffered even more-severe (and unexpected) injury in 2013, when FTC filed an enforcement action).

- 5 -

Here, Care One filed its lawsuit against Defendants on July 3, 2025. The allegations in the Complaint, which reference and incorporate allegations in the *DeVincenzo* action, *see* Comp. ¶¶ 22-23, establish that Care One was on both inquiry and actual notice of the conduct alleged in the Complaint well before July 3, 2021:

1) As early as 2015, Care One was put on inquiry notice of the alleged wrongdoing when internal concerns were raised at Care One after receipt of an invoice directly from a vendor, Bullet, and through a Care One executive director, regarding vendor invoice suspicions, as admitted in Care One's Original Compl. ¶ 48.

2) No later than 2018, in the *DeVincenzo* lawsuit, Care One was put on inquiry notice of the allegations that, among other things, Defendants Straus and Lugo had misused Care One vendors for their personal benefit, caused Care One to pay "inaccurate invoices," and concealed their personal relationship. *See Benak v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 403 (3d Cir. 2006) (recognizing that the filing of a lawsuit can put a plaintiff on notice of a RICO injury) (citing *Amy Liu v. Credit Suisse First Bos. Corp. (In re Initial Pub. Offering Sec. Litig.)*, 341 F. Supp. 2d 328, 349 (S.D.N.Y. 2004) ("The filing of related lawsuits can suffice to put plaintiffs on inquiry notice, where the alleged fraud is similar.").

As mentioned, the Amended Complaint explicitly incorporates the *DeVincenzo* allegations by reference as foundational allegations of its RICO and state common law claims. (Am. Compl. ¶¶ 22–23, 124-127). Even assuming *arguendo*, as Care One alleges in the Complaint, that it did not discover the *full* extent of Defendants' alleged wrongdoing until September 2021 (Am. Compl. ¶¶ 9–10), the *DeVincenzo* litigation placed Care One on inquiry notice of the same misconduct alleged in the

- 6 -

Complaint no later than 2018. *Mathews*, 260 F.3d at 256 (holding that discovery of injury triggers accrual).

The Complaint's allegation of a fraudulent July 22, 2021 furniture invoice within the four-year limitations period (Am. Compl. ¶ 60) does not alter the RICO statute of limitations analysis. The Supreme Court in *Klehr* rejected the theory that a new predicate act can revive otherwise time-barred claims. *Id.*, 521 U.S. at 190–91 (holding that "plaintiff cannot use an independent, new [predicate] act as a bootstrap to recover for injuries caused by other predicate acts that took place outside the limitations period"). *See also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) (holding that a pattern of racketeering activity requires at least two predicate acts within the limitations window).

Once Plaintiffs were put on inquiry notice in 2015, or in 2018 at the latest, the civil RICO limitations clock began ticking. Accordingly, the Court should dismiss Plaintiffs' RICO claims because they are barred by the applicable four-year statute of limitations.

## II.   PLAINTIFFS FAIL TO STATE A RICO CAUSE OF ACTION AS A MATTER OF LAW.

Counts I and II of Plaintiffs' Complaint fail to state RICO causes of action as a matter of law. To plead a RICO claim under Section 1962(c), "the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Lit.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)). The Complaint fails to plead these elements. Therefore, the Court should dismiss Plaintiffs' federal RICO claims as a matter of law under Rule 12(b)(6).

### A.   The Complaint Fails to Plead A RICO Enterprise

To plead a civil RICO cause of action, a plaintiff must allege the existence of a RICO enterprise. *Spirits v. Ragghianti*, No. 23-2913, 2024 U.S. App. LEXIS 15487, at *6, 2024 WL 3177773 (3d Cir. June 26, 2024); *Wealth v. Fox Rothschild LLP*, Civil Action No. 23-3194 (JKS) (JBC), 2025 U.S. Dist. LEXIS 122441, at *9, 2025 WL 1779203 (D.N.J. June 27, 2025) (Semper, J.). A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §§ 1961(4), 1962(c). A RICO complaint premised upon an associated in fact enterprise, like this Complaint, must plead an association with "a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *In re Ins.*

- 8 -

*Brokerage Antitrust Litig.*, 618 F.3d 300, 369-70 (3d Cir. 2010) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)). The purpose prong contemplates a specific common purpose of engaging in a course of conduct among the enterprise's alleged participants. *United States v. Turkette*, 452 U.S. 576, 583 (1981). "An abstract common purpose, such as a generally shared interest in making money, will not suffice." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (citing *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 n.3 (11th Cir. 2016) (observing that the "common purpose of making money" would not be sufficient to find an association-in-fact enterprise between Spirit Airlines and outside vendors)).

The enterprise pleading requirement has teeth. For example, in *Spirits v. Ragghianti*, *supra*, the Third Circuit affirmed the dismissal of the plaintiffs' federal civil RICO claim for failure to plead in sufficient detail the existence of an enterprise:

> The plaintiffs do not name the alleged common purpose that animated the association's members, explain how the alleged relationships among them allowed them to advance that purpose, or specify the period of time, sufficient to achieve that purpose, during which the association allegedly existed.... Though the complaint may allege that Ragghianti engaged in a series of unlawful acts, aided at certain points by other of the defendants, absent the structural attributes identified in *Boyle*, those allegations establish neither "an ongoing organization, formal or informal," nor that "the various associates function[ed] as a continuing unit." *Id.* at 945 [citation omitted]. And because those allegations do not plausibly support the inference that there existed "a continuing unit that function[ed] with a common

purpose," *id.* at 948, they fail to state a claim for a substantive RICO violation.

*Id.* at *6-8.

Here, the Complaint alleges in a conclusory fashion that Defendants, Monello and the Reichert Entities constituted an association-in-fact: the "Straus–Lugo Enterprise" (*Am. Compl.* ¶¶ 100–104). Nevertheless, the Complaint fails to plead facts supporting an inference of the shared purpose necessary for the existence of a RICO associated-in-fact enterprise. The Complaint attributes the full $30 million alleged loss to the RICO enterprise (*see* Compl. ¶ 100), but much of the conduct (and an unspecified amount of the injury) alleged in the RICO counts was independent conduct by Defendants individually for their own benefit, without any connection to Monello or the Reichert Entities (*see* Compl. ¶¶ 19(1), (2) & (4), 27-40, 64-77, 100, 104(p)-(t)).

With respect to the alleged participants in the enterprise, the Complaint alleges only that Defendants directed them separately, in different time frames, and without any connection between Monello and the Reichardt Entities, to fabricate or obscure invoices for services rendered to Defendants' personally, and that those vendors complied. (*Am. Compl.* ¶¶ 43–44, 54–60, 104(a)-(o)). There are no allegations that Monello or the Reichert Entities had a relationship, interacted with (or even knew) of each other, or acted in furtherance of any shared purpose or, indeed, any purpose other than, in the most general sense, to get paid for work they

- 10 -

separately provided to Defendants. Absent a specific shared purpose, there is no RICO enterprise as a matter of law. *See Wealth*, *supra* (dismissing RICO claim for failure to plead associated in fact enterprise because "[m]ere allegations of coordinated misconduct, without more, do not create a plausible inference of an ongoing enterprise") (citing cases). Therefore, the Court should dismiss Plaintiffs' RICO claims as a matter of law.

**B.    The Complaint Fails to Plead a Pattern of Racketeering Activity**

To state a RICO cause of action, a plaintiff must adequately plead a "pattern of racketeering activity," that is, the commission of at least two predicate offenses on a specified list. 18 U.S.C. § 1961(1), (5). "But a pattern requires more than commission of the requisite number of predicate acts." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1418 (3d Cir. 1991) (holding that sporadic acts of fraud and self-enrichment, even spanning multiple years, do not state a RICO claim "absent a connection to the management of a continuing unit"). Rather, a RICO complaint must also plead "that the racketeering acts are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239–40 (1989) (emphasis in original). Predicate acts are "related" for RICO purposes when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are

- 11 -

interrelated by distinguishing characteristics and are not isolated events." *Id.*, 492 U.S. at 240.

The only specific predicate act of fraud alleged in the Complaint within the four-year RICO limitations period is a single, July 22, 2021 furniture invoice. (Am. Compl. ¶ 60).[2] One alleged predicate act is insufficient as a matter of law. *See Sedima,* 473 U.S. at 496 n.14 (holding that two acts are "necessary" but "may not be sufficient"); *Kehr Packages*, 926 F.2d at 1418 (same). With only one predicate act, and no plausible second act that is legally or temporally sufficient, the "pattern" requirement is not met. *See Boback*, 47 F.4th at 178 ("Plaintiffs must show at least two acts of racketeering activity that amount to, or pose a threat of, continued criminal activity."). To the extent Plaintiffs' RICO claims rely on alleged violations of 18 U.S.C. § 2252A (criminalizing the possession and transport of child sex abuse material) to establish predicate offenses within the four-year statute of limitations, such conduct is entirely unrelated – in purpose, result, participants, victims, or methods – to the fraudulent conduct which is the focus of the RICO counts. Because

---

[2] The Complaint includes allegations regarding other payments but none of those were enterprise related or within the statute of limitations period. *See*, *e.g.*, Compl. ¶¶ 56 (February 3, 2021 wires to Elker Management and Camelot Brokerage for Hudson Yard apartment rent and broker's fee), 57 (April 14, 2021 wire for apartment termination fee), 70 (March 9, 2021 wire relating to vacation home rental), 105(b) (July 30, 2020 wire for vacation home rental), *id.* (October 22, 2020 payment to Health Capital).

relatedness is required, a RICO complaint cannot simply lump together unrelated misconduct to manufacture a pattern. *H.J. Inc.*, 492 U.S. at 240–41.

Plaintiffs' reliance on Section 2252A offenses as predicate acts forming a pattern of racketeering activity fails for other reasons, as well:

1)  The conduct, which is alleged to have occurred in July and December 2020, *see* Compl. ¶ 105(c), is time barred.

2)  The Complaint alleges the Section 2252A conduct was committed by Defendant Lugo personally and not by the defined Straus-Lugo RICO enterprise.

3)  The Complaint does not allege the elements of a Section 2252A violation, *see Breitfeller v. Playboy Entm't Grp., Inc.*, Case No. 05-cv-405-T-30TGW, 2005 U.S. Dist. LEXIS 23124 (U.S. M.D. Fla. 2005) (dismissing RICO claim premised upon Section 2252A where plaintiff failed to plead elements of that offense).

4)  Plaintiffs cannot prove a violation of Section 2252A in a civil lawsuit: possession, transmission, distribution, reproduction or presentation of such material by private citizens, including litigants and their attorneys, is illegal. *See* 18 U.S.C. §§ 2252A(a), 2256(8), 3509(m).[3]

5)  Plaintiffs lack standing because they have not and cannot allege that they were "injured in [their] business or property by reason of a violation of section 1962," 18 U.S.C. § 1964(c); *see Saint Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020) ("As distinct from Article III standing, a plaintiff bringing a civil RICO claim must additionally state an injury to business or property and 'that a RICO predicate offense "not only was a 'but for' cause of injury, but was the

---

[3] All state and federal criminal charges against Defendant Lugo were dismissed after the results of a digital forensic investigation were presented to state and federal prosecutors.

proximate cause as well."'"") (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010)). Stated otherwise, there is no connection between the alleged Section 2252A conduct and any direct business injury. *See Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 244 (3d Cir. 2003) ("An indirect injury remotely caused by the RICO violation will not satisfy proximate cause requirement.").

Plaintiffs have included (and repeated) these scandalous allegations solely because of their inflammatory nature and the Court should strike them under Federal Rule of Civil Procedure 12(f). *See Giles v. Phelan, Hallinan & Schmieg, LLP*, 901 F. Supp. 2d 509, 511 (D.N.J. 2012) ("A motion to strike is properly granted when the contested allegations have no possible relation to the controversy and may cause prejudice to one of the parties."); *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) ("The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation.") (citations and internal quotations omitted).

Here, Care One attempts to string together unrelated, time-barred financial transactions with inflammatory (and impossible-to-prove) allegations of child pornography to fabricate a "pattern." This does not satisfy RICO pleading requirements. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) ("Schemes A and H were not sufficiently related to the enterprise to

- 14 -

comprise part of a pattern of racketeering activity. Schemes A and H are unrelated

to the underlying enterprise -- which is the fraudulent manipulation of the Licensing

Agreement."). Therefore, the Court should dismiss Counts I and II of the Complaint

for failure to plead a pattern of racketeering as a matter of law.[4]

---

[4] Plaintiffs' RICO conspiracy claim in Count II fails as a matter of law because Plaintiff has not stated a substantive RICO claim under Section 1962(c) in Count I. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

III.  **PLAINTIFFS' RICO AND FRAUD CLAIMS ARE NOT PLED WITH SUFFICIENT PARTICULARITY.**

Plaintiffs have failed to plead a RICO cause of action in Count I and II predicated on wire fraud (or a common law cause of action for fraud in Count IV) because the allegations of fraud in the Complaint do not comply with Federal Rule of Civil Procedure 9(b), which requires fraud to be pled with particularity. *Warden v. McLelland*, 288 F.3d 105, 114 & n.6 (3d Cir. 2002) (holding that Rule 9(b) applies to pleading a fraud pattern of racketeering).  Accordingly, as discussed below, the Court should dismiss Plaintiffs' federal and state fraud-based claims for wont of sufficient particularity.

"[T]o satisfy Rule 9(b), plaintiffs must plead with particularity 'the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). Indeed, "a RICO predicate act of mail or wire fraud must be pleaded with even greater particularity." *Ottilio v. Valley Nat'l Bancorp*, 591 F. App'x 167, 168 (3d Cir. 2015). "When mail or wire fraud is the predicate act to a RICO violation, the plaintiff must allege that mailings are related to the underlying fraudulent scheme, even though mailings need not be an essential element of the scheme and need not themselves contain any

- 16 -

misrepresentations." *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*,

87 F. App'x 227, 231 (3d Cir. 2003) (citations omitted):

> Under Federal Rule of Civil Procedure 9(b), the circumstances constituting fraud must be pleaded with particularity, though fraudulent intent may be generally alleged. In the context of RICO mail fraud allegations, this means that the complaint must "identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation." *Annulli v. Panikkar,* 200 F.3d 189, n.10 (3d Cir. 1999). Put another way, the "who, what, when and where details of the alleged fraud" are required. *Allen Neurosurgical Assocs. v. Lehigh Valley Health Network,* 2001 U.S. Dist. LEXIS 284, No. CIV-A-99-4653, 2001 WL 41143 (E.D. Pa. Jan. 18, 2001).

*Id.*, 87 F. App'x at 231. *See Lum, supra* (holding that plaintiffs' "allegations do not

satisfy Rule 9(b) because they do not indicate the date, time, or place of the alleged

misrepresentations, the financial transactions in connection with which these

misrepresentations were made, or who made the misrepresentation to whom").

Despite having already amended their pleading once, Plaintiffs still fail to

meet the Rule 9(b) standard. The Amended Complaint alleges conversion of

corporate moneys from 2015 through 2021 in a variety of general ways – *e.g.*,

charges on corporate credit card, false vendor invoicing, and fraudulent check

writing – and claims a $30 million loss, but the Complaint does not include any of

the particulars of the fraudulent conduct required by Third Circuit precedent and

does not plead even one specific wire. *Id.* at 231-32 (noting that RICO complaint

was premised on three bids containing false promises "[b]ut the Amended Complaint

- 17 -

does not identify any particular mail or wire transmissions or allege how any mail or wire transmissions are connected to a fraudulent scheme" and holding that alleging fraudulent conduct in the absence without pleading two related acts of mail fraud is not sufficient). The Complaint also does not identify any specific false representations, any specific fraudulent transactions, any specific invoices alleged to have been falsified, or any specific dates of fraudulent conduct. Stated otherwise, the Complaint is entirely missing the who, what, when and where details of alleged fraud required by Third Circuit precedent.

The Complaint's allegations concerning a July 22, 2021 furniture invoice are emblematic of the pleading deficiency. Paragraph 60 of the Amended Complaint alleges that Defendant Lugo forwarded an invoice for personal furniture purchases to Care One's controller and instructed that it be paid. But the Amended Complaint fails to plead any specific misrepresentation made in connection with the invoice, who relied on the alleged misstatement, whether the invoice was actually paid, when it was paid, how it was paid, or by what specific account or company. The Amended Complaint does not identify any specific person who was misled, any specific conduct that renders the instruction fraudulent beyond a conclusory label, or any evidence that a wire was involved.

The absence of particularity makes it impossible for Defendants to assess whether (or for this Court to conclude that) Plaintiffs have satisfied RICO pleading

- 18 -

requirements. For example, as noted, to establish a pattern of racketeering, a RICO plaintiff must plead "continuity" of the unlawful conduct. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 232. Closed-ended continuity requires proof of "a series of related predicate acts extending over a substantial period of time." *Id.* at 242. Open-ended continuity exists requires proof of predicate acts that suggests a threat of ongoing criminal activity. *Id.* Courts have rejected claims of open-ended continuity where the alleged misconduct targeted a single victim, involved no future threat, and was inherently terminable. *Kehr Packages*, 926 F.2d at 1414 (no open-ended continuity where scheme was complete). But, in the absence of particulars regarding the alleged RICO predicate acts, it is impossible to determine – and Plaintiffs have failed to plead sufficiently – the required pattern of racketeering activity. *See Bonavitacola Elec.*, 87 Fed. App'x at 233 (holding that the Court "cannot measure continuity by collectively considering the numerous alleged acts of deceit associated with all three bids, which spanned eight years," in the absence of particulars regarding the racketeering acts).

Care One's RICO pleading defects are not new to this litigation. In *CareOne, LLC v. Burris*, Civil No. 10-2309 (FLW), 2011 U.S. Dist. LEXIS 69594, 2011 WL 2623503 (D.N.J. June 28, 2011), this Court dismissed a civil RICO complaint filed

by Care One against another former executive. There, as here, Care One alleged that the executive circumvented internal protocols, selected vendors without a bidding process, and submitted inflated invoices. This Court held that Care One's complaint failed under Rule 9(b) because the complaint failed to plead predicate acts with particularity. As in *Burris,* the Third Circuit and this Court have repeatedly rejected generalized allegations of "inflated invoices" and internal mismanagement as a substitute for particularized allegations of RICO (or common law) fraud. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir. 1997) (general allegations of fraud are insufficient to satisfy Rule 9(b)); *Wealth*, 2025 WL 1779203, at \*4 (D.N.J. June 27, 2025) ("Threadbare allegations of coordinated misconduct, absent specific details regarding who, what, when, where, and how, do not meet the pleading standard for a RICO enterprise or fraud.").

Simply stated, the Complaint contains general allegations of fraud, not the particularized pleading required by Rule 9(b) and the case law interpreting it. Therefore, the Court should dismiss Plaintiffs' RICO and common law fraud causes of action.

## IV.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS.

Federal jurisdiction in this case is tied solely to Plaintiffs' civil RICO claims. Because the Court should dismiss those federal claims, it must decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss them under 28 U.S.C. § 1367(c)(3).

A district court "may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... (3) the district court has dismissed all claims over which it has original jurisdiction ...." *Id.*  The Third Circuit has long held that, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added).  *Accord Talley v. Clark*, 111 F.4th 255, 266 n.6 (3d Cir. 2024). Here, as argued above, the Court should dismiss Plaintiffs' federal claims. Therefore, the Court should (indeed, must) decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss the remainder of the Complaint. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (encouraging federal courts to avoid "[n]eedless decisions of state law"); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he

- 21 -

rule within this Circuit is that once all claims with an independent basis of federal

jurisdiction have been dismissed the case no longer belongs in federal court.").

## V. PLAINTIFFS' STATE LAW CLAIMS ARE BARRED BY DELAWARE'S THREE-YEAR STATUTE OF LIMITATIONS.

The Complaint alleges several state common law causes of action, including breach of fiduciary duty (Count III), fraud (Count IV), conversion (Count V), unjust enrichment (Count VI), and negligent misrepresentation (Count VII), all of which claims are intertwined with Plaintiffs' internal affairs. Under Care One's Operating Agreement, Delaware's three-year statute of limitations applies to these claims, which are then time barred. Therefore, the Court should dismiss Plaintiffs' state common law claims as a matter of law.

Care One's Operating Agreement includes a valid and enforceable Delaware choice-of-law provision. In a prior New Jersey litigation, Care One successfully argued that its Delaware choice-of-law clause governs disputes arising out of the company's internal affairs. Specifically, in *Care One, LLC v. Adina Straus*, Docket Nos. A-1215-20, A-1221-20, 2022 N.J. Super. Unpub. LEXIS 2189, 2022 WL 851722 (N.J. Super. Ct. App. Div. Mar. 22, 2022), the New Jersey Appellate Division affirmed a trial court ruling that the Care One Operating Agreement's Delaware governing law provision applied to claims involving officers and shareholders. In that case, after Care One sued Adina Straus (Daniel Straus's sister) to force a buy out of her ownership interest, she counterclaimed alleging breaches of fiduciary duty. The New Jersey courts adopted Care One's argued-for position

- 23 -

that Delaware's statute of limitations and Delaware substantive law governed the action.

Having previously taken the position that Delaware's statute of limitations applies to claims arising from its internal affairs, Care One is judicially estopped from arguing otherwise here. See *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (holding that a party that successfully asserts a legal position in prior litigation cannot take a contrary position in a subsequent proceeding). Judicial estoppel bars a party from asserting a factual or legal position in a litigation that is inconsistent with a position successfully maintained by the party in prior proceedings and serves to protect the integrity of the judicial system by prohibiting strategic manipulation of the courts. *Id.* Therefore, Plaintiffs cannot be heard to oppose Delaware's three-year statute of limitations.

Delaware applies a three-year statute of limitations to common law causes of action, including breach of fiduciary duty. 10 *Del. Code Ann.* § 8106; *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). Under Delaware law, a cause of action accrues "at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *Wal-Mart*, 860 A.2d at 319.

Here, the latest act specifically alleged in the Complaint was committed on or about July 22, 2021, when Defendant Lugo is alleged to have directed a payment for a furniture invoice. (Am. Compl. ¶ 60). That conduct is outside Delaware's three-

year statute of limitations. Even crediting Plaintiffs' allegation in the Complaint that they did not discover Lugo's fraud until September 2021, the Delaware statute of limitations expired several months before Plaintiffs filed their initial Complaint in this matter. Accordingly, the Court should dismiss Plaintiffs' state law claims as time-barred under Delaware law.

## VI.   THE COURT SHOULD DISMISS PLAINTIFFS' DECLARATORY JUDGMENT CLAIM IN DEFERENCE TO A PENDING DELAWARE CHANCERY COURT ACTION ADJUDICATING THE SAME ISSUE.

Count VIII of the Complaint, which seeks a declaration that Defendant Lugo is not entitled to advancement of legal fees and indemnification under Care One's Operating Agreement, should be dismissed under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1367(4).  The same advancement/indemnification issues are being litigated in two pending Delaware Court of Chancery actions, filed by each Defendant, seeking advancement of legal fees and indemnification. *See Lugo v. Care One, LLC*, Del. Ch. Ct. Docket No. 2025-1287-SEM; *Straus v. Care One LLC*, Del. Ch. Ct. Docket No 2025-1286-SEM).[5]  In exchange for Care One's agreement to litigate the corporate issues in Delaware, Defendants agreed to consolidate the Delaware lawsuits into one action so (a) there would not be piecemeal litigation, and (b) Care One would not have to file a second amended complaint in this Court adding Defendant Straus to Count VIII.[6] Therefore, the Court should dismiss Count VIII.

The Delaware proceeding implicates important state interests involving Delaware corporate law that is separate from the underlying facts Plaintiffs seek to adjudicated in federal court in New Jersey.  The advancement/indemnification

---

[5] In Delaware, the parties have cross-moved for summary judgment and a dispositive hearing is scheduled for February 11, 2026.

[6] Indeed, as anticipated by all parties, the Delaware actions were consolidated and Care One has not filed a declaratory judgment count against Defendant Straus in this action.

claims arise from corporate governance agreements that identify Delaware as the exclusive forum for resolution of such disputes and Delaware has a strong and well-established interest in regulating and adjudicating matters involving Delaware corporate governance, fiduciary duties, and the interpretation of advancement and indemnification provisions under law. Litigating these issues in a single proceeding in Delaware would avoid piecemeal litigation and inconsistent judgments in a venue with the greatest interest in Delaware LLCs. For that reason, it was appropriate for the parties to have agreed to litigate the advancement/indemnification issues in Delaware.

Under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), district courts have broad discretion to decline jurisdiction over declaratory judgment actions, particularly when they mirror ongoing state proceedings. Therefore, even if any part of Plaintiffs' claims were to survive in federal court, which it should not, the Court should decline to exercise supplemental jurisdiction over Count VIII of the Complaint. Rather, the Court should dismiss that claim in deference to the pending Delaware Court of Chancery proceeding, in the interests of comity, federalism, and judicial economy. *See In re Pattern Energy Grp. Inc. Sec. Litig.*, No. 20-275-MN-JLH, 2022 U.S. Dist. LEXIS 14859, at *34 n.13, 2022 WL 263312 (D. Del. Jan. 27, 2022) ("[T]he fact that nearly identical shareholder claims against the same

defendants are already being litigated in the [Delaware] Court of Chancery weighs

in favor of declining discretionary jurisdiction.").

## CONCLUSION

For these reasons, the Court should grant Defendant Lugo's motion to dismiss the Complaint and for alternative relief.

Respectfully submitted,

Mark A. Berman, Esq.
**HARTMANN DOHERTY ROSA BERMAN & BULBULIA LLP**
433 Hackensack Avenue, Suite 1002
Hackensack, New Jersey 07601
t: 201-441-9056
e: mberman@hdrbb.com

*Attorneys for Defendant
Androsky Lugo*

Dated: January 22, 2026