**BRUCE L. ATKINS**
Attorney ID No.: 021291977
**DEUTSCH ATKINS, P.C.**
25 Main Street - Suite 104
Court Plaza North
Hackensack, New Jersey 07601
(201) 498-0900
*Attorneys for Plaintiff, Danielle DeVincenzo*

| | |
|---|---|
| DANIELLE DEVINCENZO,<br><br>Plaintiff,<br><br>vs.<br><br>CAREONE, LLC; ELIZABETH STRAUS, individually and in her official capacity; DANIEL STRAUS, individually and in his official capacity; ALBERTO LUGO, individually and in his official capacity; TIMOTHY HODGES, individually and in his official capacity,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br>DOCKET NO.: BER-L-004570-18<br><br>CIVIL ACTION<br><br>**FIRST AMENDED COMPLAINT**<br>**&**<br>**JURY DEMAND** |

Plaintiff, DANIELLE DEVINCENZO, by and through her attorneys, DEUTSCH ATKINS, P.C., alleges based on information and belief the following:

## PARTIES

1. Plaintiff, Danielle DeVincenzo (hereinafter, "Plaintiff"), is an individual residing at 190 Ruckman Road, Hillsdale, New Jersey 07642. Plaintiff was formerly employed by Defendants.

2. Defendant, CareOne, LLC (hereinafter, "CareOne" and/or "Defendant"), is a skilled nursing home and assisted living facility operating in New Jersey.

3. CareOne has its principal place of business at 173 Bridge Plaza North, Fort Lee, New Jersey 07024.

4. Defendant, Elizabeth Straus ("E. Straus"), is an Executive Vice President of CareOne.

5. Defendant, Daniel Straus ("D. Straus"), is the Chief Executive Officer ("CEO") of CareOne.

6. Defendant, Alberto Lugo ("Lugo") is an Executive Vice President of CareOne.

7. Defendant Timothy Hodges ("Hodges") is the Chief Strategy Officer of CareOne.

## JURISDICTION & VENUE

8. This Court has jurisdiction over Plaintiff's matter based upon the fact that Defendants conduct business in and maintain their principal place of business in Fort Lee, New Jersey.

9. Pursuant to R. 4:3-2(b), venue in Bergen County is also appropriate based upon the fact that Defendants are engaged in conducting and transacting business in Bergen County.

## FACTS

10. Plaintiff commenced employment with Defendants on July 5, 2011 in the position of Assistant Administrator of CareOne at Valley. On June 1, 2012, Plaintiff was promoted to the position of Administrator.

11. Plaintiff was named "Top Administrator" in 2016 and 2017 for overall financial performance.

12. In 2017, Plaintiff was recognized nationally by the American College of Health Care Administrators with the Eli Pick Facility Leadership Award as a top performer in the skilled nursing health care industry and was awarded the Women's Choice Award in 2016 and

2017.

13. Under Plaintiff's leadership and management, CareOne at Valley was rated the World's Best Nursing Home in 2015, 2016, 2017 and was ranked number one in the Company for excellence in customer service.

14. Throughout her tenure, Plaintiff consistently received outstanding Annual State Survey results including a Deficiency Free Survey in 2016 with Advisory Standings, without any deficiencies cited on the complaint or reportable surveys.

15. During her tenure with CareOne Plaintiff reported to Defendant E. Straus, Defendant D. Straus, Defendant Lugo and Defendant Hodges.

16. Since the onset of Plaintiff's employment with Defendants, Plaintiff was subject to a harassing, intimidating work environment. Defendant E. Straus, Executive Vice President of CareOne, made flirtatious gestures and advances on Plaintiff which caused Plaintiff to feel as though she was being treated as Defendant E. Straus' romantic partner. Examples that illustrate this conduct include, but are not limited to, Defendant E. Straus gifting her expensive handbags, instructing Plaintiff to break up with her boyfriend, inviting her on vacations, and getting angry when Plaintiff brought her fiancé as a date to an award ceremony.

17. From July 2011 through 2014, Plaintiff and Defendant Lugo were engaged in a romantic relationship.

18. In July 2014, Plaintiff became aware that Defendant E. Straus and Defendant Lugo were in a romantic relationship.

19. On July 27, 2014, while on a business trip in Boston, Defendants E. Straus and Lugo solicited Plaintiff to engage in a sexual act amongst the three of them in the hotel in which

they were residing. Following this incident, Defendants E. Straus and Lugo apologized to Plaintiff for their unprofessional and inappropriate behavior.

20. As a result of the aforementioned incident, from July 27, 2014, up until the date of her termination, Plaintiff felt uncomfortable around Defendant Lugo as he began to treat her differently.

21. During the course of Plaintiff's employment, Defendant Lugo texted Plaintiff while intoxicated and sent her photographs of himself undressed.

22. Plaintiff felt so uncomfortable with Defendant E. Straus' behavior toward her that she was nervous to tell Defendant E. Straus that she was engaged in February 2017. Plaintiff reasonably believed that Defendant E. Straus would retaliate against her as a result of her jealousy and possessive attitude over Plaintiff.

23. Upper Management Defendants E. Straus and Lugo created a sexually charged work environment so pervasive that Plaintiff felt intimidated.

24. In or about April 21, 2017, Plaintiff reported several compliance and staffing issues to Defendant E. Straus, Maureen Montegari, Vice President of Human Resources, and Toya Capser, Chief Nursing Officer. Plaintiff warned Defendant E. Straus that Director of Nursing, Joanne Stich, might quit over her concerns regarding regulatory issues with staffing. Defendant E. Straus responded, "I pay you both too much money, figure it out. If you want to leave bye-bye."

25. Subsequently, Plaintiff placed an order for necessary supplies to ensure proper care of the patients. When Defendant Lugo denied Plaintiff's purchase order, she went to Mr. Molfetta to approve the orders. Mr. Molfetta responded that the orders were not approved because they were "over budget." As a result, Plaintiff and the Director of Nursing were forced

to utilize personal funds to purchase necessary medical supplies for the Valley facility and borrow supplies from other facilities due to Defendants' refusal, putting patient care and safety at risk.

26. On numerous occasions in 2017, Plaintiff complained to Defendant E. Straus that a particular physician was not a good clinician, and that he failed to be compliant with nursing home regulations. Despite Plaintiff's concerns, Defendant E. Straus responded that the physician be put on a stipend anyway in an effort to obtain more patients. Plaintiff refused this directive, as she believed it was unethical and illegal to do so.

27. Also in 2017, Plaintiff was instructed by Defendant E. Straus to provide more unassigned patients to the above referenced physician because CareOne wanted more business from his practice. Plaintiff again refused to follow through with this directive. Plaintiff also declined to push referrals to Ascend Home Health, LLC (CareOne's owned homecare Company) after being directed to do so by Defendant E. Straus. On more than one occasion, Plaintiff complained about Ascend employee, Andre Bolukbas, who threatened her several times to, "start seriously sending him private pay referrals otherwise she would regret it."

28. On several occasions in 2016 and 2017, Plaintiff was criticized and warned by management due to voicing her concerns that she was uncomfortable having to continuously ask vendors to donate money to CareOne fundraisers.

29. Defendant E. Straus would often ask Plaintiff to call any doctors she had a good relationship with and ask them to write her a prescription. In the spring of 2017, Plaintiff stopped asking physicians to write Defendant E. Straus personal prescriptions. Plaintiff told Defendant E. Straus that this practice made her extremely uncomfortable and, that if she needed medications, she would need to go to the doctor. As a result, Defendant E. Straus instructed Plaintiff to have

Haworth Apothecary fill these personal prescriptions, deliver them to her office, and have them billed under Plaintiff's Center's invoice.

30. Moreover, on several occasions Plaintiff objected to the billing of inaccurate invoices on Plaintiff's Center, including personal invoices of Defendant E. Straus and Defendant Lugo, as well as suspected fraudulent physician stipends.

31. At the May 2017 Administrators Meeting, the discussion of Valley Hospital Social Worker, Karen Angrist's, support groups arose amongst all administrators. Regional Director of Operations/ Administrator, Charlotte Sedora, stated that CareOne doesn't get referrals back from Ms. Angrist. Plaintiff explained during this meeting that the purpose of the support groups was not to get referrals from Valley Hospital, but to facilitate a true support group program for patients. Plaintiff specifically stated to the group that it was not compliant or appropriate for CareOne to request referrals in exchange for paying Ms. Angrist for the support groups. Ms. Sedora reported Plaintiff's concerns to Defendant E. Straus, and Plaintiff reiterated her belief when asked.

32. On July 13, 2017, Vice President of Operations Controller, Richard Molfetta, informed Plaintiff that he was instructed to ask her when she was getting pregnant. Defendant CareOne is self-insured and had access to Plaintiff's medical records, reflecting that Plaintiff had visited a gynecologist in May 2017. Mr. Molfetta told Plaintiff that there were rumors that Plaintiff was trying to get pregnant. Disturbed by this possible invasion of her protected medical information, Plaintiff immediately brought her concerns to Ms. Montegari. Ms. Montegari advised Plaintiff to "ignore it." No one followed up with Plaintiff following her complaint.

33. Plaintiff became nervous that executives at CareOne believed her to be pregnant because of Defendant E. Straus' negative comments regarding other employees trying to get

pregnant and the cost to the Company. Additionally, Plaintiff is aware of other CareOne employees who were demoted and terminated as a result of their pregnancies. Defendant E. Straus made comments about an Administrator's twins being the "CareOne babies" and "Million dollar babies" because they cost the Company so much money. Plaintiff did not want to suffer the same retaliation.

34. On July 13, 2017, at the CareOne Top Golf event, once again, the subject of Ms. Angrist was brought up by Beth Durney-Stayshyn, Vice President of Business Development. She stated, "we pay all this money to Karen Angrist and we don't get referrals or a donation to Make A Wish (referring to the Make a Wish Foundation)." Again, Plaintiff was made uncomfortable when refusing to solicit "donations" and/ or referrals inappropriately.

35. In June 2017, Plaintiff and a business partner, Tara Lyons (a former CareOne employee), formed an LLC called "Curbside Confections." Curbside Confections is a candy food truck for hire at special events such as bar/bat mitzvahs, weddings and birthday parties. As a result, on July 17, 2017, an article on the Pascack Valley Facebook page was posted regarding the new business venture. Several CareOne employees, including Defendant E. Straus and other executives of the Company, called and texted to congratulate Plaintiff.

36. On July 20, 2017, Alison Fitzpatrick, Vice President of Purchasing, called Plaintiff and warned her that Defendant Hodges, Chief Strategy Officer, was on a rant about Plaintiff's candy truck business. She warned Plaintiff to be careful and to protect herself. On July 21, 2018, Plaintiff received a phone called from Mr. Molfetta informing her to "watch her back" because Defendant Hodge was making slanderous comments against Plaintiff. On July 22, 2017, Defendant Hodges attended a public food truck festival Plaintiff was servicing. Defendant

Hodges questioned consumers buying candy from Plaintiff's truck and took photographs of Plaintiff.

37. On July 23, 2017, Plaintiff received a phone call from Ms. Angrist advising Plaintiff that Ms. Durney-Stayshyn called her and inquired as to what she thought about Plaintiff as a professional. Ms. Durney-Stasyshn reports directly to Defendant Hodges.

38. Mr. James Gardner, former CareOne Administrator, and Tara Lyons' ex-husband, met with Defendant Hodges and Defendant E. Straus on July 24th and informed him that he would be taking over CareOne at Valley in Plaintiff's position of Administrator.

39. On July 25, 2017, Plaintiff was called to a meeting with Defendant E. Straus, Defendant Hodges and Ms. Montegari. The meeting lasted over two hours wherein the Defendants harassed and threatened Plaintiff to end her friendship and business relationship with Ms. Lyons. Defendant E. Straus threatened Plaintiff with legal action and a criminal complaint if she refused to end her relationship with Ms. Lyons. During this meeting, Plaintiff was presented with a Conflict of Interest Questionnaire. However, Plaintiff's candy truck did not conflict with Plaintiff's position with CareOne in any way and was not violative of any Company policy. The meeting was so disturbing that Ms. Montegari texted Plaintiff and followed up with her at a subsequent Company event to ask if she was okay.

40. On July 28, 2017, Plaintiff was called into a meeting with Ms. Montgari and Clare Doress, regional Human Resources Coordinator. Plaintiff was asked additional questions regarding Curbside Confections, questions regarding receipt of gifts from vendors, and asked whether she was resigning from CareOne. Plaintiff responded that she had no intention of leaving her position with CareOne. During this meeting, Plaintiff was notified that she was suspended from CareOne without pay effective immediately.

41. During the first two (2) weeks of Plaintiff's suspension, CareOne at Valley used her license to operate the facility, with Mr. Gardner as Administrator. Plaintiff was concerned that CareOne was inappropriately using Plaintiff's nursing home administrator's license to be responsible for the care and treatment of the residents while Plaintiff was absent and prohibited from contacting anyone in the facility.

42. Following Plaintiff's suspension, Defendant E. Straus and Defendant Hodges defamed Plaintiff to the entire Company and sister companies of CareOne. Robert Clark, Vice President of Rehabilitation Education, and Ian Oppel, Vice President of Rehabilitation, called Flora Sirico, Director of Rehabilitation, and told her Plaintiff was terminated on July 28, 2017.

43. From July 28, 2017 through September 2017, Plaintiff was notified by physicians and professionals that they were present for meetings wherein Defendants E. Straus, Defendant Lugo, Defendant Hodges and Mr. Gardner stated Plaintiff had committed a crime and that CareOne was investigating Plaintiff's improprieties.

44. From July 24, 2017 through July 28, 2017, Defendants E. Straus, Hodges and Ms. Montgari conducted interviews with CareOne employees regarding Plaintiff. During one such meeting, Defendant Hodges referred to Plaintiff as a "whore in shorts."

45. Egregiously, many CareOne employees were instructed to lie in the weeks following Plaintiff's suspension by Defendants E. Straus and Hodges. Hospital Liaison, Jennifer Somarriba, quit CareOne because she was threatened to lie for Defendants. Defendant E. Straus warned Ms. Somarriba that they "pay her mortgage." Regional Director, Mirlana Morris, also quit her employment with CareOne due to Defendants' threatening line of questioning regarding Plaintiff. Mr. Gardner told Plaintiff's brother that Plaintiff was terminated for participating in criminal activity. Ms. Karla Alvarez was terminated for not lying about Plaintiff. Several

employees received bonuses, increased vacation time and salary increases as incentives to cease contact with Plaintiff and to assist them in disparaging Plaintiff's reputation in the health care industry.

46. Owners of local businesses, who Plaintiff did business with through CareOne, contacted Plaintiff and told her that they were instructed by Defendant Lugo to cease contact with Plaintiff to avoid being thrown out of the facility. Moreover, Defendant Hodges contacted Jonathon Maschaly, Director of Business Development at Emerson Health Care Center, and made him promise Defendant Hodges that he would not hire Plaintiff once she was terminated from CareOne.

47. In September 2017, Plaintiff was notified by the New Jersey Attorney General's Office that she was being investigated for criminal conduct related to her position as Administrator at CareOne. Upon reasonable belief, CareOne contacted the Attorney General's office with these false allegations in retaliation for Plaintiff's complaints about CareOne. The criminal investigation has since been dismissed in its entirety.

48. As a result of the serious nature of the false allegations CareOne asserted against Plaintiff, she was forced to present before the Nursing Home Administrators Licensing Board ("NHALB"). On November 17, 2017, the Plaintiff was notified that the NHALB would take no further action following the investigation.

## COUNT I
### *Defamation*

49. Plaintiff repeats and re-alleges the allegations set forth above as if fully set forth herein.

50. Defendants approached multiple clients of Plaintiff, and knowingly spoke and/or published false information to third parties about Plaintiff, including publishing information that

Plaintiff was involved in criminal activity and was terminated from CareOne as a result. Defendant made these comments with the intent of ruining Plaintiff's reputation in the health care industry and irreparably damaging her.

51. Defendants intended to convince Plaintiff's former clients and colleagues to question her character by telling them that Plaintiff was involved in criminal activity. Defendants succeeded in one aspect by convincing Plaintiff's former employer not to hire her after she was suspended by CareOne.

52. Defendants knowingly spread false information to clients and colleagues with the intent of injuring Plaintiff's character and/or deterring said clients and colleagues from conducting business with Plaintiff. Consequently, Plaintiff was forced to accept a job for over $100,000 less than she was earning at CareOne.

53. When Defendants made these statements about Plaintiffs, Defendants acted, at the very least, negligently in regards to the truth of the statements.

54. As a result of Defendants' actions, Plaintiff suffered significant pecuniary loss and loss of future earning capacity.

55. Plaintiff has suffered, and will continue to suffer economic injury, mental anguish, humiliation, shame and impairment to her reputation because of Defendants' defamatory statements.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, for the following relief:

a. Economic Damages;

b. Compensatory damages;

c. Punitive damages;

d. Such other relief that the Court deems equitable and just.

**COUNT II**
***Defamation Per Se***

56. Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

57. Defendants approached multiple former clients of Plaintiff's and knowingly spoke and/or published false information to third parties about her with the intent of ruining her reputation.

58. Defendants' statements indicated that Plaintiff was involved in behavior incompatible with the proper conduct of her business (i.e., her fitness to work for the company and/or her ethics).

59. When Defendants made these statements about Plaintiff, Defendants acted at the very least negligently in regards to the truth of the statements.

60. Defendants intended to convince Plaintiff's former clients and colleagues to question Plaintiff's character.

61. Defendants knowingly spread false information to members of the health care community with the intent of injuring Plaintiff's character and/or deterring clients from conducting business with Plaintiff and/or employing her.

62. On their face, Defendants' defamatory comments so clearly denigrated Plaintiff's reputation that this Court could decide that the statements are defamatory without having to submit the issue to a jury.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, for the following relief:

a. Economic Damages;

b. Compensatory damages;

c. Punitive damages;

d. Such other relief that the Court deems equitable and just.

**COUNT III**
***Pregnancy Discrimination in Violation of the LAD***

63. Plaintiff hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

64. By and through the actions described above, Defendants discriminated against Plaintiff on the basis of her assumed pregnancy, and/or the belief she would become pregnant in the near future while employed by Defendants, in violation of the LAD, N.J.S.A. 10:5-1, et seq.

65. As a result of the Defendants' discrimination against Plaintiff on account of her assumed pregnancy and/or belief she would become pregnant in the near future while employed by Defendants, Plaintiff has suffered, and will continue to suffer, economic losses, including but not limited to, salary and benefits.

66. As a result of the Defendants' discrimination against Plaintiff on account of her assumed pregnancy and/or belief she would become pregnant in the near future while employed by Defendants, Plaintiff has suffered, and will continue to suffer, severe emotional and psychological harm.

67. The conduct involved Defendant CareOne's upper management and was egregious, willful, wanton, and in reckless disregard for Plaintiff's rights for which punitive damages are appropriate.

**WHEREFORE** Plaintiff demands judgment against Defendants and seeks the following relief:

(a) Compensatory damages for loss of wages (back pay and front pay); lost benefits, including but not limited to loss of stock options; and emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;

(b) Reimbursement for medical expenses;

(c) Punitive damages;

(d) Attorneys' fees, pre- and post-judgment interest, and costs of suit;

(e) Such other relief as the Court may deem just and appropriate under the circumstances.

**COUNT IV**
***New Jersey Law Against Discrimination,***
***N.J.S.A. 10:5-1 to -42—***
***Sexual Harassment***

68. Plaintiff hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

69. In relevant part, the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42 ("NJLAD"), prohibits sexual harassment.

70. As described in the above paragraphs, the harassment to which Plaintiff was subject was sufficiently severe or pervasive that a reasonable person would have deemed it to be hostile, abusive, intimidating, or offensive.

71. Defendants E. Straus and Lugo controlled Plaintiff's working environment, and Defendants abused that authority to create and/or tolerate a hostile work environment, thus, CareOne and D. Straus may be held liable.

72. Because the aforementioned harassment was especially egregious and CareOne's "upper management" actually participated in and/or were willfully indifferent to this wrongful conduct, punitive damages should be awarded.

**WHEREFORE** Plaintiff demands judgment against Defendants, jointly and severally, and seeks the following relief:

(a) Compensatory damages for loss of wages (back pay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;

(b) Reimbursement for medical expenses;

(c) Punitive damages;

(d) Attorneys' fees pursuant to N.J.S.A. 10:5-27.1, pre- and post-judgment interest, and costs of suit;

(e) Such other relief as the Court may deem just and appropriate under the circumstances.

## COUNT V
***Violation of the Conscientious Employee Protection Act***
***N.J.S.A. 34:19-1 et seq.***

73. Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

74. The actions of Defendants are in direct violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A., 34:19-1 *et seq*.

75. Defendants acted maliciously and willfully in creating a pretextual reason for taking an adverse employment action against Plaintiff, and have caused Plaintiff to suffer economic, emotional and psychological damages in an amount to be determined by a jury.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly and severally, and seeks the following relief:

a. Compensatory damages for loss of wages (back pay and front pay) and lost benefits;

b. Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;

c. Punitive damages;

d. Attorneys' fees and costs;

e. Such other relief that the Court deems equitable and just.

## COUNT VI
### *Malicious Prosecution*

76. Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

77. The actions of Defendants in contacting the Attorney General's Office to launch a criminal investigation against Plaintiff was done with malice, and with the knowledge that Plaintiff did not commit the crime alleged.

78. Defendants acted maliciously and willfully with an absence of probable cause that Plaintiff accepted kickbacks or otherwise engaged in criminal conduct while employed by Defendants. The baseless allegations made by Defendants to the Attorney General's Office were

not pursued and the matter was closed in favor of Plaintiff. Defendants have caused Plaintiff to suffer economic, emotional and psychological damages in an amount to be determined by a jury.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly and severally, and seeks the following relief:

a. Attorneys' fees and costs;

b. Compensatory damages for loss of earnings and impairment of social and business standing;

c. Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;

d. Punitive Damages;

e. Such other relief that the Court deems equitable and just.

## COUNT VII
### *Malicious Abuse of Process*

79. Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

80. The actions of Defendants in contacting the Attorney General's Office to launch a criminal investigation against Plaintiff was done with malice, with the knowledge that Plaintiff did not commit the crime alleged with the ulterior motive of retaliating against Plaintiff due to her CEPA and NJLAD based complaints against Defendants.

81. Defendants acted maliciously and willfully with an absence of probable cause that Plaintiff accepted kickbacks or otherwise engaged in criminal conduct while employed by Defendants. The baseless allegations made by Defendants to the Attorney General's Office were not pursued and the matter was closed in favor of Plaintiff. Defendants misused the process of

reporting a knowingly false criminal allegation to the Attorney General's Office for the vindictive purpose of attempting to punish, intimidate and otherwise threaten a former employee. Defendants have caused Plaintiff to suffer economic, emotional and psychological damages in an amount to be determined by a jury.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly and severally, and seeks the following relief:

a. Attorneys' fees and costs;

b. Compensatory damages for loss of earnings and impairment of social and business standing;

c. Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;

d. Punitive Damages;

e. Such other relief that the Court deems equitable and just.

## COUNT VIII
### *Wrongful Discharge in Violation of Public Policy*

82. Plaintiff repeats and re-alleges the allegations set forth above as if more fully set forth herein.

83. New Jersey's common law recognizes a cause of action in tort for employees who are discharged contrary to a clear mandate of public policy and prohibits employers from retaliating against employees who engage in protected activities by reporting improper or illegal conduct to supervisors or public bodies. Pierce v. Ortho Pharmaceutical Corp. 84 N.J. 58 (1980).

84. Plaintiff engaged in protected activities by making complaints concerning Defendants actions, including but not limited to those enumerated in paragraphs 24-31 and 34.

85. In retaliation for making complaints concerning Defendants, adverse action was taken against Plaintiff's employment.

86. As a result of Defendants' unlawful retaliatory conduct, Plaintiff suffered considerable loss and harm, including, but not limited to, monetary loss, injury to professional career and reputation, significant emotional and mental distress and pain and suffering.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, and seeks the following relief:

(a) Compensatory damages;

(b) Emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;

(c) Equitable relief;

(d) Reinstatement;

(e) Punitive damages;

(f) Attorneys' fees and costs;

(g) Such other relief that the Court deems equitable and just.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 4:35-1(a) and (b), Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

**DEUTSCH ATKINS, P.C.**
*Attorneys for Plaintiff, Danielle DeVincenzo*

By: ____________________________
BRUCE L. ATKINS, ESQ.

Dated: July 26, 2018

## DESIGNATION OF TRIAL COUNSEL

In accordance with Rule 4:25-4, Bruce L. Atkins, Esq. is hereby designated as trial counsel on behalf of Plaintiff.

**DEUTSCH ATKINS, P.C.**
*Attorneys for Plaintiff, Danielle DeVincenzo*

By: ____________________________
BRUCE L. ATKINS, ESQ.

Dated: July 26, 2018

**CERTIFICATION PURSUANT TO R. 4:69-4**

To date, there have been no formal hearings in the matter.

**DEUTSCH ATKINS, P.C.**
*Attorneys for Plaintiff, Danielle DeVincenzo*

By: ______________________
BRUCE L. ATKINS, ESQ.

Dated: July 26, 2018

**CERTIFICATION PURSUANT TO R. 4:5-1**

The undersigned attorney for Plaintiff hereby certifies that the within matter is not the subject of any other action or arbitration proceeding pending or contemplated, nor are there any other parties known to Plaintiff who should be joined in this proceeding.

**DEUTSCH ATKINS, P.C.**
*Attorneys for Plaintiff, Danielle DeVincenzo*

By: ______________________
BRUCE L ATKINS, ESQ.

Dated: July 26, 2018